AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br>Aida CORONA<br><br>*Defendant(s)* | Case No.<br><br>1:18MJ 00130 EPG |

**SEALED**

**FILED**
AUG 06 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 12, 2018 to May 2, 2018__ in the county of __Fresno__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 1028(a)(1) and (a)(2); | Unlawful Production of a Document or Authentication Feature; Unlawful Transfer of a Document or Authentication Feature; |
| Title 18, United States Code, Section 1546(a) | Fraud and Misuse of Visas, Permits, and Other Documents; |
| Title 18, United States Code, Section 371 | Conspiracy to commit an offense against the United States. |

This criminal complaint is based on these facts:
See Affidavit of Special Agent John Kuzma, attached hereto and incorporated by reference herein.

☑ Continued on the attached sheet.

_____
*Complainant's signature*
John Kuzma, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 6, 2018

_____
*Judge's signature*
Erica P. Grosjean U.S. Magistrate Judge
*Printed name and title*

City and state: Fresno, California

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, John Kuzma, being first duly sworn, do hereby depose and state as follows:

### I. INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI), and I have been so employed since February 2004. I am currently assigned to the Office of the Resident Agent in Charge, Fresno, California, and I have been so assigned since September 2008. Prior to my current field office, I was stationed at the HSI Office of the Special Agent in Charge, Los Angeles office. I have attended the Federal Law Enforcement Training Center (FLETC) and completed the Criminal Investigator Training Program and Immigration and Customs Enforcement (ICE) Special Agent Training courses. Prior to becoming an SA with HSI, I was a sworn police officer with the Manhattan Beach Police Department for approximately four years. As part of my daily duties as an HSI SA, I investigate criminal violations by persons involved in the possession, transfer, and manufacture of fraudulent government identification documents. I have had formal and informal training in the detection of false identification documents. During the course of my duties, I have participated in multiple cases involving the possession, transfer, and manufacture of fraudulent government documents.

2. This Affidavit is in support of a complaint charging **Aida Corona** ("CORONA") with violations of 18 U.S.C. §§ 371 (Conspiracy to commit an offense against the United States); 1028(a)(1) and (a)(2) (Unlawful Production and Unlawful Transfer of a Document or Authentication Feature); and 1546(a) (Fraud and Misuse of Visas, Permits, and Other Documents). I have not set forth every fact learned during the course of the investigation, nor do I request that this Court rely upon any facts not set forth herein in reviewing this application.

3. The facts set forth in this Affidavit are based on the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation,

including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; physical surveillance conducted by law enforcement personnel; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience.

## II. FACTS ESTABLISHING PROBABLE CAUSE

### A. Nature Of The Investigation

4. HSI Fresno initiated a benefit fraud investigation into Aida **CORONA** for manufacturing fraudulent Lawful Permanent Resident cards and Social Security cards. During the course of the investigation, an HSI Fresno Confidential Informant (CI) successfully made two (2) independent buys of fraudulent identification documents from **CORONA**, Elfego ALCALA, Tamilene CISNEROS, and Lupita CISNEROS. Specifically, on March 12, 2018, the HSI CI procured three (3) fraudulent Lawful Permanent Resident cards and three (3) fraudulent Social Security cards, and on May 2, 2018, the HSI CI procured three (3) fraudulent Lawful Permanent Resident cards and three (3) fraudulent Social Security cards. This document fraud scheme is being operated out of the Visalia and Tulare areas in California.

### B. Confidential Informant Calls To Aida CORONA

5. During the month of February 2018, HSI Fresno received information from a CI indicating that a Hispanic female identified as "Aida," later identified as Aida **CORONA**, was suspected of manufacturing fraudulent Lawful Permanent Resident cards and Social Security cards.[1] The CI stated that **CORONA** was using the telephone number (559) 736-5172. On February 6, 2018, the CI contacted **CORONA** by calling telephone number (559) 736-5172. **CORONA** answered the call and identified herself to the CI. The CI inquired if **CORONA** could assist with obtaining a Lawful Permanent

---

[1] The CI has been a confidential informant for HSI since 2006. The CI's services have been used in more than 30 HSI cases, and s/he has no history of untruthfulness as a CI. The CI has no criminal history and received Deferred Action, monetary compensation, and an Employment Card in exchange for his/her services.

AFFIDAVIT IN SUPPORT OF COMPLAINT                    2

Resident card and Social Security card. **CORONA** confirmed that she could assist and quoted a price of $150.00 per set. The telephone call was terminated shortly thereafter.

6. On March 9, 2018, the CI made a second call to **CORONA** by calling (559) 747-7501. **CORONA** answered the call and identified herself to the CI. The CI reminded **CORONA** of their initial conversation confirming that she – **CORONA** – could assist with obtaining a Lawful Permanent Resident card and Social Security card. **CORONA** confirmed the price of $150.00 per set and **CORONA** agreed to meet with the CI on March 12, 2018 at **CORONA**'s residence located at 2425 N. Highland Court, Unit C in Visalia, California. The telephone call was terminated shortly thereafter.

C. **Transaction #1**

7. On March 12, 2018, HSI agents utilized the CI to conduct the first controlled purchase of counterfeit U.S. Government documents.

8. At approximately 1230 hours, HSI SAs met with the CI to provide him/her instructions about the purchase. The CI's person and belongings were searched and no counterfeit government identity documents were discovered. The CI's vehicle was also searched and agents did not discover any counterfeit government identity documents. SA Andres Varela activated an electronic recording device and provided it to the CI. SA Varela observed the CI place the recording device in his/her front right pocket of his/her pants. SA Erin Simmons then provided $450.00 of pre-recorded buy funds to the CI and also provided the following fictional biographical information:

   Maria Ramirez Soto, DOB: 01/22/1968

   Juan Garcia Calderon, DOB: 08/16/1955

   Pedro Ramirez Soto, DOB: 08/14/1989

The fictional biographical information also included two (2) photographs of male subjects and one (1) photograph of a female subject. After providing the CI the information, HSI personnel staged to conduct surveillance of the CI and the planned meeting location. The transaction was recorded via

audio and via video by air.

9. At approximately 1300 hours, agents established surveillance at **CORONA**'s residence located at 2425 N. Highland Court, Unit C in Visalia, California. Agents observed **CORONA**'s silver Ford Taurus X with California license plate 8CKV929 parked in the stall in front of her residence. At approximately 1320 hours, the CI arrived at the residence. The CI knocked on the door of 2425 N. Highland Court, Unit C in Visalia, CA. **CORONA** came to the front door and spoke with the CI about how long it would take for the documents to be ready. **CORONA** also stated that the CI should make sure the names and photos were correct before she – **CORONA** -- gave the information to another party.

10. While the CI was speaking to **CORONA**, at 1325 hours, agents observed a grey/silver Nissan Pathfinder with California license plate 5VSD392 pull up behind the CI vehicle. A Hispanic male – later identified as Elfego ALCALA – and a Hispanic female – later identified as Tamilene CISNEROS[2] – then instructed the CI to meet later at that same location to receive the documents. The CI then provided both ALCALA and Tamilene CISNEROS the pictures of two (2) photographs of male subjects and one (1) photograph of a female subject. The CI also gave ALCALA and Tamilene CISNEROS the biographical information needed for the documents. The biographical information given was Maria Ramirez Soto, DOB: 01/22/1968; Juan Garcia Calderon, DOB: 08/16/1955; and Pedro Ramirez Soto, DOB: 08/14/1989. The CI asked how long it would take to produce the documents and Tamilene CISNEROS responded that it would take ninety (90) minutes. Tamilene CISNEROS stated that she would be sending the photographs and biographical information to someone else over the phone. The CI then paid Tamilene CISNEROS $450.00. The meeting concluded at 1345 hours. ALCALA and Tamilene CISNEROS were observed driving away in the grey/silver Pathfinder. HSI agents and air support followed the grey/silver Pathfinder to identify the location where the documents were likely being manufactured.

11. At approximately 1415 hours, HSI agents observed the grey/silver Pathfinder arrive at the address of 6135 Avenue 248 in Tulare, California 93724. ALCALA and Tamilene CISNEROS exited the vehicle and entered the residence/dairy farm. At approximately 1528 hours, the CI called Tamilene

---

[2] ALCALA and Tamilene CISNEROS are believed to be married.

AFFIDAVIT IN SUPPORT OF COMPLAINT        4

CISNEROS to see how long it was going to take to get the ID cards. Tamilene CISNEROS stated she would call him back in thirty (30) minutes.

12. At approximately 1545 hours, ALCALA and Tamilene CISNEROS were observed departing in the grey/silver Pathfinder. HSI agents proceeded to follow and observed the vehicle heading back towards the direction of **CORONA**'s residence. At approximately 1546 hours, the CI received a call from ALCALA from phone number (599) 802-6347. ALCALA informed the CI to meet at the Taco Bell located at 2421 N. Dinuba Boulevard in Visalia, California 93291. ALCALA stated later during the meet that they did not want to go back to the residence because ICE (Immigration and Customs Enforcement) was behind the Food4Less that was located near the residence where the meet was originally set to take place.

13. At approximately 1546 hours the CI received a call from ALCALA from phone number 559-802-6347 and informed the CI to meet at Taco Bell located at 2421 N Dinuba Blvd, Visalia, CA 93291.

14. At approximately 1615 hours, the grey/silver Pathfinder arrived at the Taco Bell parking lot. ALCALA was observed walking to the passenger side of the CI vehicle. At 1620 hours, ALCALA provided the CI with three (3) sets of fraudulent documents. ALCALA provided the CI with his cell phone number (599) 723-7065. ALCALA stated that if the CI wanted more cards or driver's licenses that the CI should call ALCALA a day in advance so that he could print them faster. ALCALA returned to his vehicle along with Tamilene CISNEROS. The meeting concluded at approximately 1625 hours.

15. As a result of the controlled purchase, the CI provided SA Simmons with three (3) fraudulent Lawful Permanent Resident cards and three (3) fraudulent Social Security cards that s/he purchased from ALCALA and Tamilene CISNEROS. The fraudulent documents have typed bold letter biographical information and holographic logos that appear to be produced from a computer/computer equipment. The fraudulent documents do not appear to be copied from a copy machine and do not appear to be handwritten. SA Simmons inspected the documents, searched the alien registration and social security numbers on the documents through government databases, and determined that the documents were in fact fraudulent and consistent with the fictional biographical information provided to ALCALA and Tamilene CISNEROS by the CI.

### D. Transaction #2

16. On April 30, 2018, at approximately 0605 hours, the CI contacted ALCALA at telephone number (559) 723-7065. The CI inquired about meeting ALCALA again and ALCALA agreed to meet the CI at the Taco Bell located at 2421 N. Dinuba Boulevard in Visalia, California on May 2, 2018 at 1330 hours. The telephone call was terminated shortly thereafter.

17. On May 2, 2018 at approximately 1245 hours, HSI SAs met with the CI to provide him/her with instructions about the purchase. The CI's person and belongings were searched and no counterfeit government identity documents were discovered. The CI's vehicle was also searched and agents did not discover any counterfeit government identity documents. SA Ulises Solorio activated an electronic recording device and provided it to the CI. SA Solorio observed the CI place the recording device in his/her front right pocket of his/her pants. Task Force Officer (TFO) Monique Jacques then provided $450.00 of pre-recorded buy funds to the CI and also provided the following fictional biographical information:

> Jose Martinez Garcia, DOB: 11/18/1992
>
> Liliana Moreno, DOB: 08/03/1979
>
> Francisco Estrada Moreno, DOB: 06/11/1954

The fictional biographical information also included two (2) photographs of male subjects and one (1) photograph of a female subject. The transaction was recorded via audio and via video by air.

18. After providing the CI the information, HSI personnel staged nearby to conduct continuous surveillance of the CI and the meeting location. At approximately 1300 hours, the CI parked in the Taco Bell parking lot at 2421 N. Dinuba Boulevard in Visalia, California and agents established surveillance.

19. At approximately 1324 hours, a then-unknown female – later identified as Lupita

CISNEROS[3] – arrived at the Taco Bell parking lot and exited a blue raspberry metallic Honda hatchback bearing California license plate 6WJF175. HSI agents then observed Lupita CISNEROS approach the CI's vehicle. Lupita CISNEROS began speaking with the CI about prices for the documents. The CI then provided Lupita CISNEROS with two (2) photographs of male subjects and one (1) photograph of a female subject. The CI also gave Lupita CISNEROS the biographical information needed for the documents: Jose Martinez Garcia, DOB: 11/18/1992; Liliana Moreno, DOB: 08/03/1979; and Francisco Estrada Moreno, DOB: 06/11/1954. The CI paid CISNEROS an amount totaling $450.00.

20. The CI asked Lupita CISNEROS how long it would take to get the documents and Lupita CISNEROS stated that she did not know. Lupita CISNEROS received the money and returned to her vehicle. The meeting concluded at 1330 hours, and Lupita CISNEROS drove away in the blue raspberry metallic Honda. Agents and air support followed this vehicle. The CI called ALCALA and asked how long it would take to get the documents. ALCALA responded that they would be ready at 1440 hours.

21. At approximately 1333 hours, HSI SAs observed Lupita CISNEROS make a brief stop at the intersection of Race and Locust St in Visalia, CA, before meeting two male subjects in a white Cadillac at a carwash at Leland Avenue and Hillman Street in Visalia, California at approximately 1400 hours. Shortly thereafter, the white Cadillac departed and the agent began to follow. The white Cadillac had no vehicle plates and was later identified as a vehicle ALCALA drives.

22. At approximately 1410 hours, HSI SAs observed the white Cadillac arrive at 6135 Avenue 248 in Tulare, California 93724. The two male subjects exited the vehicle and entered the residence. At approximately 1514 hours, agents observed two male subjects exit the residence; one of them was holding documents in his hand. The agents then observed the white Cadillac leave the residence at 1315 hours, and they followed the vehicle to an apartment complex on Myrtle Court in

---

[3] Lupita CISNEROS is the sister of Tamilene CISNEROS and thus also the sister-in-law of ALCALA.

AFFIDAVIT IN SUPPORT OF COMPLAINT                    7

Visalia, California. Three male subjects -- one of them ALCALA -- then entered a grey/silver Pathfinder bearing California license plate 5VSD392. At approximately 1329 hours, HSI SAs followed the vehicle as it headed back towards the direction of the Taco Bell meet location.

23. At approximately 1620 hours, the CI received a call from ALCALA who informed the CI that he was on his way to Taco Bell. At approximately 1625 hours, the grey/silver Pathfinder was observed parking in the Taco Bell parking lot located at 2421 N. Dinuba Boulevard in Visalia, California 93291. TFO Jacques observed the male in the driver side of the grey/silver Pathfinder and clearly identified him as ALCALA. ALCALA was observed handing documents through his driver's side window to the passenger side of the CI vehicle. At 1626 hours, ALCALA provided the CI with three (3) sets of fraudulent documents. The meeting concluded at 1630 hours.

24. As a result of the controlled purchase, the CI provided TFO Jacques with three (3) fraudulent Lawful Permanent Residence cards and three (3) fraudulent Social Security cards. The fraudulent documents have typed bold letter biographical information and holographic logos that appear to be produced from a computer/computer equipment. The fraudulent documents do not appear to be copied from a copy machine and do not appear to be handwritten. TFO Jacques inspected the documents, searched the alien registration, social security, and driver's license numbers on the documents through government databases, and determined the documents were in fact fraudulent and consistent with the fictional biographical information provided to ALCALA by the CI.

### III. CONCLUSION

25. The above facts set forth probable cause to believe that **Aida CORONA** is in violation of 18 U.S.C. §§ 1028(a)(1) and (a)(2) (Unlawful Production and Unlawful Transfer of a Document or Authentication Feature); 18 U.S.C. § 1546(a) (Fraud and Misuse of Visas, Permits, and Other Documents and 18 U.S.C § 371 (Conspiracy to commit an offense against the United States). I therefore request that the Court issue an arrest warrant for Aida **CORONA** for these violations.

I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

John Kuzma, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on: August 6, 2018

The Honorable Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

APPROVED AS TO FORM BY:

/s/ Laura D. Withers
LAURA D. WITHERS
Assistant United States Attorney

AFFIDAVIT IN SUPPORT OF COMPLAINT        9